In re STEVENSON, Lynn E., SSN 572–56–2610, EIN 82–0247678, Debtor.

Bankruptcy No. 90–00480–11.

United States Bankruptcy Court, D. Idaho.

April 3, 1992.

---

James L. Kennedy, Jr., Ketchum, Idaho, and Gary D. Babbitt, Hawley, Troxell, Ennis & Hawley, Boise, Idaho, for debtor.

Ron Kerl, Green, Service, Gasser & Kerl, Pocatello, Idaho, for Farm Credit Bank of Spokane.

## MEMORANDUM OF DECISION

ALFRED C. HAGAN, Chief Bankruptcy Judge.

A motion for a declaratory ruling concerning the debtor's attempted modification of his confirmed plan, and a motion for the determination of the Farm Credit Bank claims are at issue in this chapter 11 case. Both motions have been made by Farm Credit Bank and refer to a proposed modification of his confirmed plan by the chapter 11 reorganized debtor, Lynn E. Stevenson.

The motion for a declaratory ruling seeks the legal conclusion the debtor cannot modify his plan in the manner he contemplates. Since this motion is essentially a motion to terminate the modification process by attacking the legal sufficiency of the attempted modification, it will be discussed first.

## HISTORY

The proposed chapter 11 plan of Lynn E. Stevenson was confirmed on October 31, 1990. The plan treatment afforded the Farm Credit Bank claims was in accord-

ance with a stipulation between the parties dated August 16, 1990. The agreement provided Farm Credit Bank held secured claims based on three separate loans designated as the Camas/Gooding loan, the Bliss loan, and the PCA loan.

The Camas/Gooding loan is the largest of the three and apparently is the only loan involved with the proposed modification. The plan provision, in accordance with the agreement, set the allowed amount of the Camas/Gooding secured claim at $785,-000.00. $100,000.00 was to be paid on October 1, 1990, and apparently was paid at that time. The remaining $685,000.00 is payable in 25 annual installments at 11.25% interest with the first payment of interest only due December 1, 1990. This payment was also apparently made. The first annual installment of both principal and interest in the amount of $82,825.72 was due on or before December 1, 1991.

The plan also provided for the addition of $215,000.00 to the principal of the allowed amount of the Camas/Gooding secured claim if the debtor defaulted in making any of the first five annual installments within thirty days from the due date of the installment. The failure to make any of the December 1 annual payments within thirty days thereof further resulted in an acceleration of the full amount of the Farm Credit Bank allowed secured claim on the Camas/Gooding loan, including the additional $215,000.00.

The debtor's discharge was entered on November 6, 1990 after confirmation of the plan.

On December 20, 1991, after failing to make the December 1, 1991 payment on the Camas/Gooding loan, the reorganized debtor, Lynn E. Stevenson filed a motion for an "... order regarding plan modification and conditionally suspending plan execution."

The principal relief sought by this motion was to obtain "... terms for curing any defaults with respect to ..." the default provisions of the Camas/Gooding loan.

The motion further requested an order "suspending the execution of the confirmed plan until the modification could be accomplished."

Farm Credit Bank opposed the motion and filed an extensive memorandum in support of its opposition on December 30, 1991, the time set for hearing on the motions. At the hearing, suspension of the plan was denied, but Stevenson was allowed to file his proposed modification and proceed with the modification on its merits under the provisions of 11 U.S.C. § 1127(b).

On January 7, 1992, Stevenson filed his "reorganized debtor's modification of confirmed plan ..." which specified the manner in which the modification was proposed.

The modification contemplates reduction of the allowed amount of the Camas/Gooding loan from the original $785,000.00 to $552,000.00, and provides for payment of the remaining balance of $452,000.00 plus interest at 9% from October 1, 1990, in annual installments of $46,018.12. The modification would further allow Stevenson to elect to pay any annual installment in two separate payments, the first installment due on the first day of December of each year and the remainder of the annual installment with accrued interest due on March 1 of the following calendar year. The modification also provides for an increase in the interest rate from 9% to 10.5% on December 1, 1995. The modification motion further proposes the modification be entered "nunc pro tunc" to October 31, 1990.

Again, the issue raised by the Farm Credit Bank's motion for a declaratory order is whether such a modification can be considered or granted under the provisions of 11 U.S.C. § 1127(b) or 11 U.S.C. § 105(a).

■■■■ While Mr. Stevenson argues the applicability of 11 U.S.C. § 105(a),[1] the is-

---

1. 11 U.S.C. § 105(a) provides:

(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provi-

sion of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary

sue must be decided under the allowable plan modification procedures of 11 U.S.C. § 1127(b).[2] The "equitable power" provisions of section 105(a) cannot be used to produce a result contrary to specific legal provisions.[3]

■ The proposed modification is a material modification. If authorized, the modification would materially alter the plan provisions and would materially impair further the secured claim of Farm Credit Bank. The modification is not the type of modification which can be authorized without seriously affecting the rights of creditors as provided in the confirmed plan. The proposed modification effects are thus substantial and are controlled exclusively by the modification conditions contained in Section 1127(b). Under that section the first issue is whether the present plan has been substantially consummated, since substantial consummation precludes further attempts at material modifications.

■ Substantial consummation has three elements:

(A) transfer of all or substantially all of the property proposed by the plan to be transferred;

(B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and

(C) commencement of distribution under the plan.[4]

■ A review of the debtor's confirmed first modified chapter 11 reorganization plan would indicate the only property transferred by the plan involved the secured claim of Arrowhead Trust. The plan provisions provide, in paragraph 5(a), the Arrowhead Trust claim is satisfied by transferring the collateral securing such claim to Arrowhead Trust. Further, on page 6 of the plan under paragraph 7 is provided:

7. *Completion of plan transfers.* Transfers under paragraph 5 of this plan shall be completed on confirmation of this plan, or if such transfers are to be deferred by the provisions of this plan or by any agreement of the parties, upon such date as may be so provided or agreed.

Assuming this transfer has been completed, paragraph (a) of the essential consummation elements has been satisfied. The burden of showing the absence of substantial consummation is on the debtor.[5]

The debtor has assumed the business and the management of the farm which is the subject matter of the chapter 11 plan, and has commenced distribution of the payments provided for under the plan. The plan has been substantially consummated. The only act remaining to be performed by the debtor over the remaining term of the plan is to make the cash payments as provided for by the plan.

■ The conclusion of substantial consummation is buttressed by the materiality of the proposed modification. If the modification is allowed, a new plan would be created as far as the treatment of the allowed secured claim of Farm Credit Bank is concerned.[6] Of further note is the fact

---

or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

.    .    .    .    .

2. *In re Charterhouse, Inc.,* 84 B.R. 147 (Bankr. D.Minn., 1988) held the provisions of 11 U.S.C. § 105 cannot be sued to create remedy governed by the provisions of 11 U.S.C. § 1127(b).

3. *Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988); *In re Shoreline Concrete Co., Inc.,* 831 F.2d 903, 905 (9th Cir.1987); *In re Ionosphere Clubs, Inc.,* 922 F.2d 984, 995 (2nd Cir.1990); *Matter of Lapiana,* 909 F.2d 221, 224 (7th Cir.1990); *In re Morristown and Erie R. Co.,* 885 F.2d 98, 100 (3rd

Cir.1989); and *United States v. Sutton,* 786 F.2d 1305, 1308 (5th Cir.1986).

4. 11 U.S.C. § 1101(2).

5. *In re Fansal Shoe Corp.,* 119 B.R. 28, 30 (Bankr.S.D.N.Y.1990); and *In re U.S. Repeating Arms Co.,* 98 B.R. 138, 140 (Bankr.D.Conn. 1989).

6. In *In re Olsen,* 861 F.2d 188 (8th Cir.1988) the court held the debtor's plan had not been substantially consummated and allowed the modification. However, the secured claim of the affected creditor was not further "crammed down", but the terms of payment merely extended.

the Farm Credit Bank claim treatment in the confirmed plan was based on an agreement between the parties. To allow the debtor to unilaterally rescind that agreement would violate the principal of finality expected in chapter 11 confirmed plans.[7] Under the circumstances, the Stevenson confirmed plan must be given res judicata effect.

For these reasons it is concluded the proposed modification is not authorized under the provisions of 11 U.S.C. § 1127(b) or 11 U.S.C. § 105(a) and a declaratory order will be entered to that effect in accordance with the Farm Credit Bank motion. The practical effect of such an order will terminate further proceedings on the modification and will authorize the denial of the modification motion. A separate order will be entered.

This memorandum of decision shall constitute formal findings of fact and conclusions of law. A separate order will be entered.

---

**7.** *See In re Little,* 91 B.R. 451, 454 (Bankr. S.D.Ohio, 1988); *In re Astroglass Boat Co., Inc.,* 32 B.R. 538, 543 (Bankr.M.D.Tenn.1983); and *In re Blanton Smith Corp.,* 81 B.R. 440, 442 (D.S.M.D.Tenn.1987).